UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                           :
RALPH SPARKS                                               :
                                                           :
                          Petitioner,                      :     **REPORT AND**
                                                           :     **RECOMMENDATION**
            - against -                                    :
                                                           :     06 Civ. 6965 (KMK)(PED)
JOHN W. BURGE, Superintendent,                             :
Elmira Correctional Facility,                              :
                                                           :
                          Respondent.                      :
                                                           :
------------------------------------------------------------x

TO:   THE HONORABLE KENNETH M. KARAS
      UNITED STATES DISTRICT JUDGE

Ralph Sparks, currently confined at Elmira Correctional Facility and proceeding *pro se*, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, setting forth ten (10) separate grounds for relief.

On March 4, 2003, Sparks was convicted after a combination suppression hearing/bench trial in Sullivan County Supreme Court (LaBuda, J.) of various felony offenses related to three residential burglaries in the village of Liberty, New York. On April 25, 2003, he was sentenced to determinate terms totaling 25 years. For the reasons stated below, the petition should be denied.

**BACKGROUND**[1]

On December 9, 2002, residences located at 10 Milton Avenue, 2 Teak Street, and 548 North Main Street, all in the village of Liberty, New York, were burglarized during daylight hours while the homeowners were away. On the afternoon of that same day, a white Toyota

---

[1] Because I hereinafter conclude that Petitioner's only viable claim in this Court relates to the performance of his appellate counsel, I provide only a brief summary of the evidence presented at trial.

Celica, New Jersey license # NBF-19H, became stuck in the snow on a lawn adjacent to the 2 Teak Street residence, and the driver of the vehicle interacted with a neighbor and with the proprietor of a nearby auto repair shop in the course of getting the car free.[2] At trial, both witnesses identified Sparks as the driver of the distressed Toyota Celica observed in the vicinity of 2 Teak Street.

Later that same day, at about 6:15 p.m., New York State Trooper James Lacki responded to a radio report of a disabled vehicle on an embankment adjacent to the eastbound lanes of Route 17 between Exits 111 and 112, in the vicinity of Wurtsboro, New York (east of Liberty). Trooper Lacki found a white Toyota, New Jersey license #NBF-19H, missing a front license plate, which had come to rest 50 feet off the highway down the embankment. The driver's side door was wide open, and the state trooper observed footprints in the snow leading back to the highway. Trooper Lacki entered the Toyota via the open door to look for identification, and observed a black duffel bag which gaped open to reveal a handgun as well as a stack of bank-wrapped United States currency and rolled coins. Lacki summoned Trooper Paul Langowski to the scene, and after the policemen discussed Lacki's observations they received a radio call indicating that a pedestrian was walking along Route 17 near Exit 112.

Trooper Langowski then drove to Exit 112 and encountered Ralph Sparks in the vicinity of a service station adjacent to the exit. Sparks indicated that his car was stuck in a ditch and that he was seeking a tow. Langowski asked about the gun in the car and Sparks replied that it belonged to his sister. At this point, Trooper Langowski arrested Sparks for possession of the gun. Searching Sparks incident to the arrest, Langowski recovered jewelry from his pockets.

---

[2]Edward Knapp, the neighbor, wrote down the license plate number because he was concerned about possible damage to the lawn. Police later recovered a New Jersey license plate with the same number from the snow in the area where the car had become stuck.

2

(The jewelry was later identified as having been stolen during the burglaries.) Sparks later asked Langowski what he was being charged with, and, upon being informed that the charges included several burglaries, Sparks stated that he had only done three burglaries.[3]

The following day, the white Toyota Celica was searched pursuant to a warrant issued in the Village of Liberty Justice Court. The search yielded numerous items which were identified at trial as having been stolen in the December 9 burglaries.

## PROCEDURAL HISTORY

At a pretrial hearing on February 24, 2003, Sparks agreed to waive his right to a jury trial in exchange for a commitment from the trial judge and the prosecutor that his sentence, in the event of a conviction, would be "capped" at 25 years.[4] By agreement, the parties then proceeded with a combined suppression hearing/bench trial on March 3 and 4, 2003. Petitioner Sparks testified for purposes of the suppression hearing but not the trial. T. 216 et seq. After both sides rested, the defense argued, *inter alia*, that: 1) Trooper Lacki illegally entered the Toyota (which Sparks claimed was left with doors closed); 2) all evidence which flowed from discovery of the gun in the Toyota, including the burglary proceeds recovered from the Toyota and from Sparks, as well as Petitioner's statements to the police, was inadmissible "fruit of the poisonous tree"; and therefore 3) there was insufficient admissible evidence to convict. T. 264.

---

[3]Sparks also gave an inculpatory written statement to a detective from the Liberty Police Department later in the evening. However, Judge LaBuda ruled that the written statement, as distinguished from the oral statements to Trooper Langowski, was not admissible against Sparks at trial. T. 297-98.

[4]As part of this agreement, the prosecution and the court agreed not to invoke persistent felony offender procedures which could expose the defendant to enhanced sentencing. See N.Y. Penal L. § 70.10. Transcript excerpts which include this exchange are contained in Respondent's Exhibit D, pp. RA-69 et seq.

At the conclusion of this proceeding, Judge Labuda admitted the physical evidence and Petitioner's statements to Trooper Langowski, but suppressed Spark's written statement to the Liberty police. T. 296-98. The Court then concluded that the prosecution had established Petitioner's guilt beyond a reasonable doubt, and convicted Sparks of all charges. T. 300-305. The Court imposed sentence on April 25, 2003.

On direct appeal to the Appellate Division, Third Department, Petitioner's counsel raised two issues: 1) a claim that the police improperly arrested Sparks based on evidence illegally seized from his vehicle and that evidence derived from his arrest should therefore have been suppressed; and 2) a claim that the 25 year sentence should be reduced in the interest of justice. See Appellant's Brief (submitted as Respondent's Exhibit B.) Petitioner sent the Appellate Division a *pro se* brief setting forth five additional claims: 1) a claim that he never received a requested audio police tape (styled as a Brady issue); 2) a claim that his trial lawyer never viewed the crime scene; 3) a claim that his trial lawyer failed to argue the "time differences"; 4) a claim that his trial lawyer failed to cross examine the police officer about his ability to see inside the bag containing the gun and the money; and 5) a general claim that his trial lawyer failed to advise and defend him adequately. See Appellant's *Pro Se* Brief (submitted as Respondent's Exhibit C). On December 16, 2004, the conviction was affirmed. See People v. Sparks, 13 A.D.3d 814 (3d Dept. 2004).

On January 12, 2005, Petitioner's counsel submitted a leave application to the Court of Appeals. See Letter of Justyn P. Bates, Esq., to Hon. Stuart M. Cohen, Clerk, Court of Appeals, dated January 12, 2005 (submitted as Respondent's Exhibit F). The letter seeking leave raised only issues related to the propriety of the vehicle search . On March 11, 2005, leave to appeal was denied. See People v. Sparks, 4 N.Y.3d 836 (2005).

On March 7, 2006, petitioner filed a *pro se* motion for a writ of error coram nobis in the Appellate Division, Third Department. In that motion, Sparks raised a claim of ineffective assistance of appellate counsel. The motion was denied in a Decision and Order dated June 1, 2006, which has been submitted as Respondent's Exhibit L. On June 26, 2006, petitioner sought permission to appeal that ruling to the Court of Appeals. On August 1, 2006, petitioner's request was denied. See Decision and Order dated August 1, 2006 (submitted as Respondent's Exhibit O).

Petitioner then initiated this action by filing a Petition for a Writ of Habeas Corpus, which was dated August 13, 2006, received by the court's *pro se* office on August 22, 2006, and docketed on September 11, 2006 (D.E. 2). As noted above, the Petition sets forth ten (10) separate grounds for relief. On January 16, 2007, Respondent filed an Answer, Memorandum of Law, and two volumes of supporting exhibits. (D.E. 6.) Petitioner filed a Declaration in Opposition on April 18, 2007. (D.E. 8.)

**DISCUSSION**

**I. Timeliness**

The Anti-Terrorism and Effective Death Penalty of 1996 ("AEDPA"), established a strict one-year time period in which a prisoner seeking review of a state conviction may file a *habeas corpus* petition. See 28 U.S.C. § 2244(d). In this case, the starting point for the AEDPA limitations period is set by subsection (d)(1)(A), "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[,]" which in the Second Circuit includes an additional 90 days representing the time allowed to file a petition for certiorari even where no such petition has been filed. See Williams v. Artuz, 237

F.3d 147, 151 (2d Cir. 2001). However, the "time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not be counted" toward the one-year limitation period. 28 U.S.C. § 2244(d)(2).

Here, the New York Court of Appeals denied leave to review Petitioner's direct appeal on March 11, 2005, so the starting point for the AEDPA limitations period is 90 days later, June 9, 2005, which would mean the limitations period expired on or about June 8, 2006. However, Petitioner filed his coram nobis application on March 7, 2006, and leave to appeal from the denial of that application was denied on August 1, 2006, so 147 days are not counted pursuant to § 2244(d)(2), and the limitations period was thereby extended to on or about November 21, 2006. The instant petition, which was filed on September 11, 2006, is therefore timely under AEDPA.

**II. Exhaustion**

"An application for a writ of habeas corpus . . . shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State[.]" 28 U.S.C. § 2254(b)(1)(A). In order for a claim to be exhausted, a petitioner is required to have presented it at all available levels of the state courts. See, e.g., Baldwin v. Reese, 541 U.S. 27, 29 (2004)("the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review)")(citations and quotation marks omitted). Respondent argues that several of Petitioner's claims do not meet the exhaustion requirement.

6

### A. Petitioner's Ground One

In Ground One of his petition, Sparks argues that his trial attorney was unprepared and failed to follow up on issues presented to him by Petitioner. Sparks raised similar claims in his *pro se* brief to the Appellate Division, which found his "apparent claim of ineffectiveness of counsel . . . to be unpersuasive." People v. Sparks, 13 A.D.3d 814 (3d Dept. 2004). However, Petitioner failed to present any claim of ineffectiveness of trial counsel in his leave application to the Court of Appeals. Because Petitioner abandoned this claim in the final round of his New York State appeal, he no longer has "remedies available" and the claim can therefore be deemed to have been exhausted. See Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991). However, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim." Gray v. Netherland, 518 U.S. 153, 162 (1996).

### B. Petitioner's Grounds Two, Three, Seven, Eight and Ten

Sparks asserts in his petition that: 1) he did not consent to combine his suppression with a bench trial [Ground Two]; 2) the printed form he signed to document his waiver of a jury trial was invalid [Ground Three]; 3) the evidence presented to the grand jury that indicted him was insufficient and improperly obtained [Ground Seven]; and 4) certain evidence relating to the firearm should not have been admitted [Ground Eight].

These claims were not presented to the state court in Petitioner's direct appeal. In his coram nobis application, Sparks included these claims in a list of "Meritorious Issues Ignored By Appellate Counsel" which was presented in support of his ineffective assistance of appellate

7

counsel claim, but did not argue that the state court should or could grant relief on these claims on coram nobis.[5] Thus, these claims have not been presented to the state courts, and are not properly exhausted. However (as Petitioner has tacitly acknowledged by arguing that his appellate counsel should have raised these issues on direct appeal), the claims are now defaulted and can be "deemed exhausted" because the failure to raise then on direct appeal "forecloses further collateral review in state court." St. Helen v. Senkowsky, supra, 374 F.3d at 183-84. This procedural default, once again, "prevents federal habeas corpus review[.]" Gray v. Netherland, supra, 518 U.S. at 162 (1996).

Sparks also asserts that the "accumulative effect" of the errors identified in the first nine points of his petition warrants habeas relief [Ground Ten.] As was the case with the four claims addressed above, however, Petitioner's cumulative error claim appears only in the list of "Meritorious Issues Ignored By Appellate Counsel" presented in support of his coram nobis application seeking relief on other grounds. Cumulative error claims, like other claims, must be exhausted before federal habeas corpus review can be undertaken. See Wooten v. Kirkland, 540 F.3d 1019, 1025-26 (9th Cir. 2008), cert. denied sub nom Wooten v. Horel, 2009 U.S. LEXIS 4179 ( 2009). Petitioner's failure to raise this claim in state court, however, again results in a procedural default whereby the claim can be considered exhausted but cannot be reviewed in this Court.

---

[5]A coram nobis proceeding in the pertinent appellate court is the appropriate procedural vehicle for asserting an ineffective assistance of appellate counsel in New York pursuant to People v. Bachert, 69 N.Y.2d 593 (1987). However, a writ of coram nobis is appropriate only to address violations "not appearing on the record" and is "not a substitute for a new trial, appeal, or other statutory remedy[.]" Id. at 598 [citation omitted]. There is no basis to conclude that Sparks exhausted claims simply by mentioning them in a coram nobis petition seeking relief on other grounds.

8


### C. Petitioner's Grounds Four, Five, Six and Nine

Petitioner's grounds four, five and six track the Fourth Amendment claims which were raised by his appellate counsel before the Appellate Division and in a leave application to the New York Court of Appeals.[6] Thus, these claims are exhausted, and Respondent does not suggest otherwise.

The ineffective assistance of appellate counsel claim contained in Petitioner's Ground Nine was exhausted by the coram nobis petition and the denial of review thereof. Again, Respondent does not dispute exhaustion of this claim.

### III. The Merits

#### A. Fourth Amendment Claims (Grounds Four, Five, and Six)

In Grounds Four, Five, and Six of his Petition, Sparks raises issues related to the initial, warrrantless entry of the Toyota Celica as it sat disabled off the highway in the snow.[7] This event was indeed pivotal as it led to discovery of a gun and bank-wrapped currency in the car,

---

[6] Petitioner's appellate counsel did not cite the Fourth Amendment or federal caselaw in presenting these claims to the state courts. However, counsel's arguments about a lack of probable cause for Petitioner's arrest and an unreasonable search of Petitioner's car "call to mind a specific right protected by the Constitution[,]" and also invoke a "pattern of facts that is well within the mainstream of constitutional litigation." Daye v. Attorney General, 696 F.2d 186, 194 (2d Cir. 1982)(en banc).

[7] In Ground Four, Sparks asserts that there was "no probable cause to search the vehicle." In Ground Five, Sparks argues that his detention and arrest (including the search incident thereto which led to discovery of stolen jewelry on his person) were "fruits" of the "illegal search of the vehicle[.]" In Ground Six, Sparks argues that a review of the "time line" leading to discovery of the gun in the car establishes that this was an improper search. All three points are based upon the premise that the trooper's entry into the abandoned Celica violated Petitioner's Fourth Amendment rights.

9

which in turn led to Petitioner's arrest on a gun charge and the subsequent discovery of burglary proceeds on his person. However, Respondent correctly observes that Petitioner's Fourth Amendment claims are not cognizable on habeas review in this Court.

In Stone v. Powell, 428 U.S. 465 (1976), the Supreme Court held that federal habeas review is not available for Fourth Amendment claims where the state has provided a full and fair opportunity for litigation of the claims. The Court of Appeals has subsequently approved New York's mechanism for litigation of such claims, see Gates v. Henderson, 568 F.2d 830, 837 (2d Cir. 1977)(en banc), cert. denied, 434 U.S. 1038 (1978), and has indicated that habeas review of Fourth Amendment claims can only be undertaken where the state has not provided such a mechanism or where the petitioner has been precluded from using that mechanism due to an unconscionable breakdown in the underlying process. Id. at 840; see also Cappellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).

Here, Petitioner can make no claim that he was precluded from using New York's procedures for litigating Fourth Amendment claims. His counsel filed a pretrial motion to suppress, and the trial court granted an evidentiary hearing (which was conducted in conjunction with the bench trial) and made findings concerning the admissibility of the contested evidence before considering the evidence on the question of Petitioner's guilt or innocence. The trial court's rulings on Petitioner's motion to suppress were reviewed on direct appeal. Under these circumstances, there can be no question that Sparks had a full and fair opportunity to litigate the propriety of the search of the car in the underlying state proceeding. Further review in this Court is therefore not available.

### B. Ineffective Assistance of Appellate Counsel (Ground Nine)

In Ground Nine of his Petition, Sparks asserts that

> "The lack of arguments in petitioner's brief shows there was little to no effort on the part of appellate counsel. If appellate counsel had put forth any effort to investigate the issues in this matter . . . the petitioner's brief would have been better prepared, more accurate, legally persuasive and this matter would have turned out differently."

Petition, D.E. 2, 5th page (unpaginated). Respondent contends with some justification that Petitioner here "merely argues generalizations" and has "failed to set forth in what manner the brief submitted on his behalf was deficient." Memorandum in Support of Answer, D.E. 6, Point Five (unpaginated). However, Respondent also concedes that Petitioner's ineffective assistance of appellate counsel claim was "presented to the state courts in [Petitioner's] motion for a Writ of Error Coram Nobis[,]" id., and in the interest of granting the *pro se* Petitioner a liberal construction, I read the Petition as encompassing the matters which were presented to the state court in connection with the coram nobis motion.

In the coram nobis motion, Sparks presented a list of "Meritorious Issues Ignored By Appellate Counsel." The issues there identified by Petitioner included: 1) ineffective assistance of trial counsel; 2) a claim that Petitioner did not consent to combine the pretrial suppression hearing with the bench trial; 3) a claim that the printed "Waiver of Jury Trial" form utilized to document Petitioner's consent to this procedure was defective; 4), 5), and 6) issues relating to the search of the car; 7) a claim that the evidence presented to the grand jury was insufficient and/or illegally obtained; 8) testimony about the operability of the gun should not have been admitted; and 9) cumulative effect of the cited errors.

Ineffective assistance of appellate counsel claims are reviewed under the same two-part standard applicable to ineffective assistance of trial counsel claims. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). Petitioner must show first that his attorney's performance fell below an objective standard of reasonableness, and second that there is a reasonable probability that but for counsel's error, the outcome would have been different. Id., citing Strickland v. Washington, 466 U.S. 668 (1984). However, appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000). Indeed, the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986)(quotations omitted). Thus, reviewing courts should not "second-guess" reasonable professional judgements or impose on counsel a duty to raise every colorable claim on appeal. Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998). On the other hand, the Court of Appeals has indicated that "a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, supra, 13 F.3d at 533.

In this case, Petitioner's appellate counsel raised the search-and-seizure issue as well as a sentencing issue addressed to the appellate court's discretionary authority to modify a sentence in the interest of justice. Appellant's Brief (submitted as Respondent's Exhibit B.) The search and seizure issue, which had been preserved by a pretrial motion to suppress, was the subject of a two-day evidentiary suppression hearing which was conducted jointly with the bench trial. The propriety of the search was, by any measure, the principal issue in this case at the trial level, and Petitioner has, in effect, acknowledged the significance of the issue by seeking habeas

12

review of the lawfulness of the search in Grounds Four, Five, and Six of his petition. Thus, Petitioner's appellate counsel can in no way be faulted for raising this issue, as it was well-preserved, fully-litigated, and pivotal to the outcome of the case.[8]

In contrast to the search-and-seizure issue, the purportedly meritorious alternative issues identified by Petitioner were by no means significant or obvious.[9] The trial record does not reflect that Petitioner or his counsel objected in any way to the combined suppression hearing/bench trial, the jury waiver form, the grand jury presentation, or the testimony establishing the operability of the gun, so these issues were not properly preserved for appellate review. See People v. Gray, 86 N.Y.2d 10 (1995)(discussing New York's contemporaneous objection rule). Assuming (as is by no means clear) that errors occurred with respect to these matters, appellate counsel cannot be faulted for exercising professional discretion by selecting a pivotal, well-preserved claim over unpreserved issues which – individually or in combination – had no apparent impact on the outcome at trial.

As articulated by Petitioner in his coram nobis motion raising ineffective assistance of appellate counsel, Petitioner's ineffective assistance of **trial** counsel claim rests on matters outside the trial record: "Trial counsel put forth little effort to investigate the issues, locate the

---

[8]The sentencing issue presented by Petitioner's counsel on the direct appeal, addressed to the appellate court's statutory discretion to modify a sentence which, "though legal, was unduly harsh or severe[,]" N.Y. C.P.L. § 470.15 [6][b], was likewise appropriate and could have benefitted Petitioner substantially if granted by the court.

[9]Of course, as noted above, the search-and-seizure-related issues included in Petitioner's list **were** raised by appellate counsel, albeit not in the precise terms Petitioner prefers. The Appellate Division concluded, however, that Petitioner "had no expectation of privacy in the abandoned car[,]" and that the arrest and search and seizure of the car were therefore proper. People v. Sparks, 13 A.D.3d 814 (3d Dept. 2004). There is therefore no factual basis for Petitioner's argument that he was prejudiced by counsel's purported "failure" to raise the search issue.

13

police logs, or follow-up on the questions put before him by [Petitioner.]" Notice of Motion For Writ of Error Coram Nobis, p.7 ¶ 1 (submitted as Respondent's Exhibit I). In New York, ineffective assistance claims based upon matters outside the record are not cognizable on direct appeal, see People v. Kim, 91 N.Y.2d 407, 423 (1998), so appellate counsel can hardly be faulted for failure to raise such a claim.[10]

Thus, the claims which Petitioner contends should have been presented to the Appellate Division by his appeal attorney, far from being significant and obvious, were either unpreserved or based upon allegations outside of the trial record. Appellate counsel properly raised a well-preserved search-and-seizure claim which had been the principal focus of the proceedings in the trial court, as well as a sentencing point which the appellate court had clear statutory authority to entertain. There is, therefore, no basis to conclude that Petitioner did not receive effective assistance of appellate counsel.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that this Petition be DISMISSED with prejudice.

Further, because Petitioner has not made a substantial showing of a denial of a federal right, I recommend that no certificate of appealability be issued. *See* 28 U.S.C. § 2253(c)(2);

---

[10]Petitioner raised similar issues in a handwritten *pro se* submission to the Appellate Division, which entertained Petitioner's claims to the extent of rejecting them: "we have examined the various arguments in defendant's brief, including his apparent claim of ineffectiveness of counsel, and find them to be unpersuasive." People v. Sparks, 13 A.D.3d 814 (3d Dept. 2004). In no way does this limited discussion of the claim signal that appellate counsel had a duty to raise a procedurally-inappropriate claim on Petitioner's direct appeal.

14

*Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000), *cert. denied* 531 U.S. 873 (2000).

I also recommend that the Court certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from its order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962).

**NOTICE**

Pursuant to 28 U.S.C. §636(b)(1), as amended, and FED. R. CIV. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to FED. R. CIV. P. 6(d), or a total of thirteen (13) working days, see FED. R. CIV. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Kenneth M. Karas at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas.

Dated: September 23, 2009
      White Plains, New York

                                    Respectfully Submitted,

                                    PAUL E. DAVISON
                                    United States Magistrate Judge
                                    Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

        The Honorable Kenneth M. Karas
        United States Courthouse
        300 Quarropas Street
        White Plains, New York  10601

        Ralph Sparks
        03-A-2113
        Elmira Correctional Facility
        P. O. Box 500
        Elmira, New York 14902

        Stephen F. Lungen
        Sullivan County District Attorney
        Sullivan County Courthouse
        Monticello, New York 12701
        Attention: Bonnie M. Mitzner, Esq.